THE UNITED STATES DISTRICT COURT
OF BOSTON, MASSACHUSETTES

JOHNSON OLAKUNLE EDDO )
#50350-053 )
   Petitioner )
     vs. )
Winn, Warden ) RE: CASE NUMBER: 4:04-CV-40223
Bracey, Disciplinary Hearing Officer )
Larkin, Counselor - G-UNIT )
Premisy, Counselor - G-UNIT )
Jenkensen, Case Manager - G-UNIT )
Colon, S.I.S. Lieutenant )
Brown, SIA )

AMMENDMENT TO PETITIONER'S MOTION UNDER 28 USC 2241
TO BE EXPEDITED

   Comes now, the petitioner, Olakunle Eddo, acting pro-se, whom respectfully submit this Ammendment/motion as a prisoner of the bureau of prisons and a United States Citizen.

   The following are facts concerning the Disciplinary officer's report and petitioner's concern under "Prison condition".

GROUND ONE: Contradictions, Misinformation and Deliberate indifference in Disciplinary hearing officer's report

Supporting fact: First of all, petitioner will ask the court to check

the DHO's contention by viewing his report enclosed in this document.

The DHO, Mr. Bracey signed his name that he delivered the said report to petitioner in person on the 4th of november at 3:45 p.m. when he actually delivered it on friday, the 5th of november, after the 4 p.m. count time.

Petitioner immediately contacted/called upon officer Washington who was working at the time the DHO delivered the report and he verified that the DHO was infact seen briefly approaching petitioner's cell and quickly exiting on the 5th of november. Inmate Gillian #37541-060 (housed in Cell 223 across from petitioner's cell 204) witnessed the DHO delivering the report. Those are the petitioner's witnesses concerning that issue.

On the 2nd of november, after petitioner and institution received a notice of petitioner's law-suit in the honorable court, an emergency meeting was immediately called on that day. Petitioner will also like to inform the court that he was sanctioned by the DHO on the 20th of October and was not provided with a copy of the report until after the court notified the institution of the suit and was given 28 days to respond. Petitioner further contends that the DHO then viewed petitioner's 28 USC §2241 and then drafted his report, ineffect changing certain testimony to suit his purpose/defense.

According to the DHO's report, the DHO framed the questions in order to receive answers to make petitioner seem like the perpetrator. Petitioner informed the DHO that, "I stood up in order to call Gladokun to come back to his cell", but the DHO only mentioned "I stood up" in his report. Petitioner mentioned that inmate Alfonse "did not come into the cell but that he stood by

the entrance to the cell the petitioner was occupying were Alfonse then swung on the petitioner right on camera. Petitioner believes that the S.I.S Lieutenant Colon must have erased the part of the recording to hide evidence. Petitioner stated that he blocked the punch thrown by Alfonso but that he lost his balance and staggered back, almost falling to the ground but the DHO only stated in his report that petitioner said; "I blocked it" and not giving any details. The DHO's statement in his report that he considered petitioner's statement which he submitted to him along with a diagram but he actually refused to read petitioner's statement and only informed petitioner to answer 'yes' and 'no' to his questions. Petitioner will like the court to note that the inmate Alfonse, who was called upon by the DHO at the hearing was the main culprit who assaulted petitioner with stones. Petitioner further points out that the nature of his injury was never mentioned/noted on the incident report nor the DHO's report. Also note that the inmates were armed with a pillow case full of tar, padlocks and at least one razor that was used in slashing petitioner on his head. Petitioner also contend that he never fought with Alfonso in the bathroom but instead tried to make peace with Alfonse in the bathroom but instead Alfonso and three others tried to charge at petitioner so petitioner feigned as if he was going to grab for a 'mop-wringer' and that caused the attackers to back away at the time. The DHO failed to mention in his report that when he questioned Alfonse whether or not petitioner strike him with the 'mop-wringer' that Alfonse told the truth that petitioner didnot strike him with it.

Petitioner will further point out that there was no security

in the unit because the unit officer was not present in the unit and the door was locked at the time. The scheduled inmate movement is not until 3 p.m. Petitioner also point out that himself and Oladokun didn't expect any trouble nor planned to fight anyone because if that was the case, they too would have been armed and would have not been standing in the open, right on camera. Petitioner suggest that the DHO submit the video surveilance pictures and pictures of petitioner's injury, including the hospital report and x-ray to the court inorder to accertain petitioner's contention.

Petitioner also contend that the inmates came to attack him and Oladokun by the telephone and maintain that there were no words exchanged between Oladokun and the attackers when they attacked as the court will view in the video surveilance. Petitioner further points out that he saved inmate Oladokun from getting killed when inmate Alfonse attempted to further strike Oladokun with the pillow-case full of tar while he laid on the ground unconscious. I should be commended and not crucified for a good deed.

The DHO lied on his report when he quoted inmate Oladokun as saying; "I told him to put the knife down." That is certainly not believable. Oladokun's testimony was that he told Alfonse to put the knife away and that Alfonse mistakingly dropped his knife and Oladokun told him to 'pick it up' and put it away. And that Oladokun did not attempt to attack Alfonse when he picked the knife up when Oladokun had a chance to. The DHO's report has been untruthful.

The DHO refused to believe that petitioner only 'bit' two

of his attackers while he was struggling for his life in the little cell. The staff refused to mention that the petitioner was the one who informed the officers of the 'bite marks' on the two inmates that led to their detection after the incident.

The DHO mentioned that the photograph and video do not show the inmates confronting the petitioner while they attacked Oladokun but note that he mentioned that petitioner was standing at 'close proximity' to Oladokun by the telephone. If Alfonse swung on petitioner and summoned petitioner to the bathroom, then it is eminent that petitioner would be eventually struck once Oladokun had been struck beside him. The video will definitely support petitioner's statement.

Furthermore, petitioner will like to point out that the DHO has phrased his reply to him in his own words when the DHO actually seldom allowed petitioner to explain.

The hearing was not about finding the people and punishing the inmates responsible for attempting to take petitioner's life but rather a plot to frame the petitioner and Oladokun as the perpetrators. These shows that the institution did not serve justice but is deceitful. Allowing the inmates who attempted to take petitioner's life to testify against him but never finding out nor interested in finding out who fractured petitioner's arm and slashed his head with a razor blade, eventhough petitioner keep on telling them who it is.

ARGUEMENT: Petitioner points out to the court that the DHO's finding, code 299 is said to be compared mostly to attempting/aiding/planning to fight or assault, according to the DHO's report.

Petitioner has proven that there is no such evidence in the DHO's report fact that shows the petitioner planned to carry out any of these plan. Even if there was an officer around and the petitioner did not report immediately, it will still not amount that the petitioner was guilty of planning to fight or assault. The court should then consider that the petitioner might have wanted to delay reporting the incident to staff later when no one noticed to avoid being labelled a 'snitch' by fellow inmates.

Notwithstanding, petitioner maintains that the door to the G-Unit was secured as usual but ofcourse the door to the upstairs unit GB could or may have been open but the officer/unit was outside of the building at the time. Keep in mind that it was a sunday (May 30) so petitioner did not expect any other unit staff (unit-team) to be available on such day. Petitioner however learnt later that only one unit-team member is available over the weekend.

GROUND TWO: RETALIATION TACTICS PRACTICED BY STAFF OF FMC DEVENS.

SUPPORTING FACTS: Petitioner noticed the warden go beserk on inmate Oladokun #21480-037 on the 4th (thursday) of November when Oladokun tried to ask the warden a question. Petitioner witnessed mr. Winn raging in the hallway and accusing Oladokun of 'filing a law-suit against him'. Petitioner then realized that mr. Winn must have confused Oladokun for petitioner since petitioner and Oladokun have similar names. The petitioner will like the court to note

that this incident took place shortly after Mr. Winn was served by the court. Mr. Winn further stated that we inmates have no rights whatsoever. When I reminded the warden to respond to my appeal (BP-9) on legal mail, he told me he would have my unit-team contact me without him taking down any note. Mr. Winn was flanked by his Associate Warden, Ms. Shutz and SHU lieutenant, Mr. Hufagale.

Petitioner will like to point out to the court that the institution didnot decide to jeopardize (sabotage) the investigation until after petitioner filed appeals at various levels, accusing staff of negligence and when petitioner mentioned that he would seek compensation in the future on his BP-10 (to region). Attached to this document is all appeals filed by petitioner and reply. Petitioner will like to point out that on the 14th (thursday) of October, before 11 a.m., petitioner handed his then unit counselor, Mr. Larkin the BP-11 (central office, washington) and petitioner is yet to receive a receipt for the said mail as of today. Petitioner strongly believes that Mr. Larkin sabotaged his mail in order to impede petitioner's appeal process. The ~~region~~ reasons being that the BP-10 (concerning DHO decision) received by the petitioner has been presented with a receipt ~~by~~ Mr. Larkin. Also attached is a copy of the receipt for BP-10.

GROUND THREE: VIOLATION OF DUE PROCESS AND THE RIGHT TO ACCESS COURT, THEREBY VIOLATING THE 6TH AMMENDMENT

SUPPORTING FACT: On several occassions, petitioner's legal correspondence have been violated by ISM, Counselor Larkin and Unit

team case manager, Ms. Jenkensen.

On or around the 3rd of October, 2004, petitioner's legal mail was brought over to him by counselor Larkin and the mail was opened and marked 'Opened in error' by ISM. When petitioner protested to Mr. Larkin, he answered that it was a mistake.

On or around 20th of July, 2004, petitioner's mail/legal was first delivered to inmate Oladokun #21480-037 opened, by the SHU officer by mistake. Petitioner's mail was stamped as 'not meeting criteria for special mail as stipulated in 28 CFR, chapter V', when the mail infact 'did' meet criteria. It was a mail sent from petitioner's attorney, Mr. English and marked 'ATTORNEY/CLIENT PRIVILEDGED MAIL' - 'OPEN ONLY IN THE PRESENCE OF INMATE'.

When petitioner complained to Mr. Larkin and Ms. Jenkensen, the two officials informed petitioner that 'ISM' was right in opening the legal mail. Ms. Jenkensen then advised petitioner to exhaust his remedy if not satisfied with their answer. Petitioner tried to point out to staff that his right to private/confidential legal counsel is being violated and that he is being endangered when his legal mail is mistakingly handed to other inmates via regular mail drop-off instead of counselor Larkin delivering the mail himself. The petitioner filed a BP 8.5 to the unit team thereafter protesting the 'tampering' of his mail and advising that the situation be settled amicably without further litigation. The unit manager, Mr. Colabero then informed the ISM and petitioner was visited by ISM Assistant manager, Mr. Amico who agreed with petitioner that his mail/legal had been violated. Petitioner awaited his written reply to no avail. Then the petitioner wrote another BP 8.5 requesting that the unit team present him with a written reply eventhough Mr. Amico

verbally agreed with petitioner. Petitioner claims he would rather the reply be in writing. Petitioner consulted the warden, Mr. Winn every Thursday pleading that he order Mr. Larkin to reply the appeal but weeks go by without any reply so petitioner realized that the entire staff are working together to deter his appeal.

On or about July 30th, 2004, Mr. Larkin delivered petitioner's legal mail in person un-opened.

Since petitioner realized the conspiracy, he decided to file a sensitive BP-9 to the region (directly). Petitioner stated that his legal mail had been tampered with and that his appeals had been ignored at the institutional level and therefore he has found that his appeal will cause/post retaliation and repercussion during his stay at Devens. Instead, the region wrote and denied petitioner's appeal, informing petitioner to go ahead and file a BP-9 with the warden. The petitioner then filed a BP-9 with the warden, Mr. Winn which was received on October 12th, 2004 and rejected by the warden on grounds that petitioner did not file a BP-8.5 first with the unit-team. On Thursday, Oct 14, when Mr. Winn visited the SHU, petitioner consulted Mr. Winn and reminded him that he did in fact file the BP-8.5 but Mr. Winn feigned ignorance instead and said he believes his staff did not receive the appeal. He informed petitioner to file a new BP 8.5 and attach it to the same BP-9 that had been rejected and forward them both ~~to Ms. Jenkensen st to~~ the unit-team. On Friday, October 15, petitioner handed the documents to Ms. Jenkensen shortly after noon. While enroute the one hour recreation, petitioner noticed Ms. Jenkensen reading the appeals in a nearby office. Petitioner will like the court to note that he discussed Ms. Jenkensen on

the appeal as being uncooperative and misleading. Petitioner will also like to stress that he has since not received a receipt for this said appeal.

Furthermore, petitioner claims that on October 21, 2004, petitioner received his legal mail via regular mail opened instead of being handed over by his counselor.

Again, on the 28th of October, 2004, petitioner received another legal mail that was stamped as 'not meeting criteria for special mail', despite petitioner's appeals. This proves to show the staff disregard for BoP regulations and 'attorney client priviledge'.

I will also like to point out that all legal mails sent from court are without any questions opened at this institution. Attached with this document are petitioner's legal mail envelopes that have been inappropriately opened and handled. Petitioner will ask the court to save the envelopes and all other documents as court exhibits which the petitioner will contact the court for in the future. Petitioner will like to warn that the exhibits should not be sent back to petitioner via mail because the institution is liable to conceal such evidence.

CONCLUSSION: Petitioner states that all the above named staff members has conided and conspired to sabotage petitioners welfare. The DHO no doubt had a 'conflict of interest' issue in the matter. Petitioner also points out or has excessively proven that the DHO's decision and sanctions were bias and partial.

Petitioner, at this point request the court to reverse the DHO decision and sanction and that the petitioner be moved from this hazardous institution as soon as possible.

Petitioner however has no doubt that the institution will move for an extension inorder to stall the court decision hereby keeping petitioner longer in the segregation. The Institution has had more than enough time (over 5 1/2 months) to gather their investigation therefore petitioner should be moved to a location where he can participate in programs and work to pay off his fines and for advancement of petitioner's welfare. Thank you

11/08/04
DATE

J.O. EDDO
RESPECTFULLY SUBMITTED

I, Olakunle Johnson Eddo declare that the foregoing is true and correct to the best of my knowledge, information and belief and that any false statement made there in are made subject to the penalty of perjury 28 USC §1746.

11/08/04
DATE

J.O. EDDO
SWORN

COMPILED EXHIBITS

EXHIBIT A1: DISCIPLINARY HEARING OFFICER'S REPORT

EXHIBIT A2: INITIAL INCIDENT REPORT (201) IR # 1238463

EXHIBIT A3: REQUEST FOR ADMINISTRATIVE REMEDY (BP-9) DATED 07/03/04

EXHIBIT A4: EXTENSION FOR RESPONSE TO (BP-9) DATED AUGUST 6, 2004

EXHIBIT A5: REGIONAL ADMINISTRATIVE REMEDY (BP-10) DATED 08/18/04

EXHIBIT A6: REGIONAL APPEAL RESPONSE # 341599-R1 DATED SEPT 22, 2004

EXHIBIT A7: DHO ADMINISTRATIVE APPEAL (RECEIPT) DATED NOV. 1, 2004

EXHIBIT B1: REJECTION NOTICE TO ADMINISTRATIVE REMEDY SPECIAL/LEGAL MAIL REMEDY ID # 352836-R1

EXHIBIT B2: REJECTION NOTICE TO ADMINISTRATIVE REMEDY SPECIAL/LEGAL MAIL REMEDY ID # 354678-F1

EXHIBIT C1: PETITIONER'S LEGAL MAIL ENVELOPE DATED JUNE 03, 2004

EXHIBIT C2: PETITIONER'S LEGAL MAIL DATED JULY 20, 2004

EXHIBIT C3: PETITIONER'S LEGAL MAIL ENVELOPE DATED OCTOBER 21, 2004

EXHIBIT C4: PETITIONER'S LEGAL MAIL ENVELOPE DATED OCTOBER 28, 2004