# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>Olakunle Johnson Eddo, *pro se* )<br>Petitioner, )<br> )<br>v. )<br> )<br>David L. Winn, *et al.*, )<br>Respondents. )<br>_____ ) | Civil Action No. 04-40223 (RGS) |

## MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and 12(b)(6)

Respondent, David L. Winn[1], respectfully submits this memorandum in support of his Motion to Dismiss, and requests that this Court dismiss the above Petition for a writ of *habeas corpus* for lack of subject matter jurisdiction, and failure to state a claim for which relief can be granted. As set forth below, Petitioner failed to exhaust his administrative remedies through the Bureau of Prisons ("BOP"). In addition, Petitioner does not state any valid due process claim, nor is his request for transfer a proper subject for a writ of *habeas corpus*. Thus, the government requests that this Court dismiss the above action in its entirety.

---

[1] The Petition also names six other respondents. It is well settled that the Warden of the institution where the Petitioner is currently being held is the only proper respondent in a *habeas* action. 28 C.F.R. § 2242-43; see Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994); Blango v. Thornburgh, 942 F.2d 1487, 1491-1492 (10th Cir. 1991); United States v. Kennedy, 851 F.2d 689, 690-691 (3d Cir. 1988); Guerra v. Meese, 786 F.2d 414, 416-417 (D.C. Cir. 1986); see also Rumsfeld v. Padilla, 124 S. Ct. 2711, 2713 (2004). Thus, the government respectfully requests that the Court amend the case caption to include only David L. Winn, the warden at FMC Devens, as respondent.

I.      BACKGROUND

        A.      **Factual and Procedural History**

        The Petitioner, Olakunle Johnson Eddo, was incarcerated at the Federal Medical Center

in Devens, MA ("FMC Devens") from April 29, 2004 through December 8, 2004.  See Public

Information Data Sheet for Inmate Olakunle Eddo, Register Number 50350-053,  Document

("Doc.") A of the Declaration of Ann H. Zgrodnik ("Zgrodnik Decl.") (attached as Exhibit 1 to

this Memorandum).  Records indicate that on December 8, 2004, Petitioner was transferred from

FMC Devens and is currently in holdover status at the Federal Transfer Center in Oklahoma City.

Id.  Petitioner filed an "Emergency 28 U.S.C. § 2241(c)(3) motion to overturn [Discipline

Hearing Officer] sanctions as well as immediate transfer."  October 22, 2004.  Petition at 1.[2]

Petitioner challenges the results of a disciplinary hearing that found he engaged in Conduct

Which Disrupts or Interferes with the Security of Orderly Running of the Institution, also referred

to as a Code 299.  Id.  As punishment, Petitioner received 15 days of disciplinary segregation and

27 days loss of Good Conduct Time.  Id.

_____

        [2]  Petitioner filed his first petition on October 22, 2004 ("Petition") and an amended
petition ("Amended Petition") on November 8, 2004. They are referred to collectively as
"Petition" herein.

The Petition apparently stems from FMC Devens' Discipline Hearing Officer ("DHO") changing Incident Report Number 1238463 from finding Petitioner violated Code 201, for fighting, to a Code 299 after a disciplinary hearing about the fight.  Petition at 1.[3]  Petitioner alleges the following: 1)  he did not instigate the incident, but was assaulted; 2) investigators "sabotaged" the investigation to portray the fight's victims as its perpetrators; 3) the DHO refused to let Petitioner explain his side of the incident in detail at the hearing and ignored Petitioner's written statement; 4)  the DHO refused to view the video surveillance tapes and pictures of the fight; 5) DHO and investigators discriminated against Petitioner because evidence at hearing was tampered with; 6) Petitioner did not receive a copy of the DHO report until the prison staff was notified by the Court of the Petition.  See Amended Petition at 2.  Petitioner also claims that the FMC Devens staff has retaliated against him for filing his Petition, and denied him access to the courts because his "legal correspondence [had] been violated."  Id. at 6-7.  Petitioner requests that the DHO decision be overturned, his sanctions be restored, and he be transferred to another Bureau of Prisons ("BOP") institution for his safety and the orderly running of FMC Devens.[4]  Id. at 7-8.

_____

[3] The incident in question was a May 30, 2004, fight between Petitioner and a group of inmates that was caused by Petitioner's verbal intervention in a dispute between two other inmates.  Petition at 2.  The crux of the dispute between Petitioner and the DHO is Petitioner's biting of two inmates during the fight.  Petitioner claims self-defense, but the DHO maintains that Petitioner's intervention in the first dispute was unnecessary and that biting other inmates is an action that is not consistent with self-defense.  See Amended  Petition at 4-5; see also Doc. H §§ V, VII.

[4]   As a practical matter, this request is moot, since Petitioner has been transferred to another institution.  Doc. A.  Nevertheless, the government will briefly discuss the legal issues related to this claim.

**B.**     **Required Administrative Procedure**

The BOP utilizes a three-tiered system for inmate grievances.  28 C.F.R. § 542.10 *et seq* (2002).  An inmate's first step in the process begins inside the prison where they are encouraged to discuss any complaints with a member of their Unit Team.  Both the inmate and Unit Team member are to sign a written record of the meeting.  If the inmate is not satisfied with the informal meeting, he may then file a formal complaint with the institution's warden within 15 calendar days of the informal meeting.  Id. at § 542.13.

If the inmate remains unsatisfied with the warden's response, he may then proceed to the second tier of the administrative process.  The second tier takes the inmate's complaint outside the prison where he is incarcerated and allows for an appeal of the warden's decision to the Bureau of Prisons Regional Director within 20 calender days of the warden's decision.  Id. at §§ 542.14, 542.15.  The inmate's final step for an administrative remedy is an appeal to the General Counsel of the Bureau of Prisons in Washington, DC.  An appeal to the General Counsel must be filed within 30 calendar days following the Regional Director's decision.  Id.

II.     **ARGUMENT**

      A.    <u>**This Court Lacks Subject Matter Jurisdiction Because Petitioner Has Failed to Exhaust His Administrative Remedies As To Each Claim**</u>

      BOP records indicate that Petitioner did not follow the proper appeal procedure, and that he has not exhausted all available administrative remedies as to each issue addressed in the Petition.  Before bringing an action in Federal Court, an inmate must exhaust "such administrative remedies as are available."  42 U.S.C. § 1997e(a) (1996).  The Supreme Court has held that Congress mandated that an inmate exhaust any possible administrative remedy to resolve a grievance before turning to the courts.  <u>Booth v. Churner</u>, 532 U.S. 731, 738-739 (2001).  The <u>Booth</u> Court affirmed dismissal of a prisoner's complaint seeking monetary damages against guards from a Pennsylvania state prison for cruel and unusual punishment.  The Court held that even if an inmate is seeking monetary damages, he still must utilize a prison's internal system of administrative remedies before turning to the courts, even if the administrative remedies available do not allow an inmate to receive damages.  <u>Id</u>. at 733-734.

      The same reasoning has been applied to petitions for writs of *habeas corpus*.  It is well settled that such petitions must be dismissed by the courts unless the petitioner has exhausted all possible administrative remedies.  <u>U.S. v. Brann</u>, 990 F.2d 98, 104 (3d Cir. 1993); <u>Arias v. U.S. Parole Comm.</u>, 648 F.2d 196, 199 (3d Cir. 1981); <u>Soyka v. Alldredge</u>, 481 F.2d 303, 306 (3d Cir. 1973); <u>DeVincent v. U.S.</u>, 587 F. Supp. 494, 494 (E.D. Va. 1984), <u>aff'd</u>, 746 F.2d 1471 (4th Cir. 1984).  <u>See also</u> <u>Moscato v. Fed. Bureau of Prisons</u>, 98 F.3d 757, 759 (3d Cir. 1996).

> **1.     Petitioner has not exhausted his administrative remedies as to the sanctions imposed as a result of Incident Report Number 1238463.**

On or about October 25, 2004, Petitioner submitted a Regional Administrative Remedy Appeal with the Northeast Regional Director in Philadelphia concerning the sanctions imposed by the DHO resulting from Incident Report Number 1238463.  Zgrodnik Decl. ¶ 5; Doc. I.  On or about November 1, 2004, Petitioner filed a second appeal of the DHO's sanctions with the Northeast Regional Director on or about November 1, 2004.  Id.  Upon the Northeast Regional Director's receipt of Petitioner's  second appeal, his first appeal was automatically voided.  Id.  The second appeal was ultimately rejected because Petitioner submitted more than one continuation page.  Id.  Both appeals were returned to Petitioner on or about November 8, 2004, and he was instructed that he could resubmit one appeal with one continuation page within 10 days.  Id.  He never resubmitted this appeal.  Id.  Thus, has not exhausted all administrative remedies available through the BOP.

> **2.     Petitioner has not exhausted his administrative remedies as to his request for a transfer.**

The Petitioner's attempts to seek a transfer follow a similar pattern to his appeal of the DHO hearing.  Petitioner began his attempt at transfer on July 3, 2004, when he filed a Request for an Administrative Remedy with FMC Devens' warden, David L. Winn.  Zgrodnik Decl. ¶ 6; Doc. J.  The Warden responded August 5, 2004, stating that Petitioner's complaint and request for transfer were referred to the proper authorities for investigation.  Id.  The Warden advised Petitioner that he would remain in the Special Housing Unit until he was transferred or it was safe for him to return to the general population.  Id.

6

On or about August 18, 2004, the Petitioner then appealed the Warden's response to the Northeast Regional Director. Zgrodnik Decl. ¶ 6; Doc. K. That appeal was denied on or about September 22, 2004. Id. On or about October 22, 2004, Petitioner appealed the Northeast Regional Director's response to the National Inmate Appeals Administrator. Zgrodnik Decl. ¶ 6; Doc. I. The National Inmate Appeals Administrator rejected Petitioner's appeal on November 16, 2004, for failing to provide a copy of the Institution Administrative Remedy Request Form, or a copy of the response from the warden. Id. Petitioner was informed that he may resubmit his appeal in proper form within 15 days. Id. Because Petitioner's appeal to the National Inmate Appeals Administrator was rejected, and he has not resubmitted his appeal, he has not exhausted his administrative remedies with regard to this issue.

> ### 3.    Petitioner has not exhausted his administrative remedies as to his legal mail claim.

As set forth below, Petitioner has not exhausted his administrative remedies with regard to his legal mail claim. He submitted an appeal to the Northeast Regional Director regarding access to his legal mail on or about September 16, 2004. Zgrodnik Decl. ¶ 7; Doc. I. This appeal was rejected for failing to file a BP-9 request through FMC Devens for the Warden's review and response before appealing to the Northeast Regional Director. Petitioner was also informed that his appeal was not sensitive and should be conducted through proper procedure by submitting an appeal through the Warden first. Id. On or about October 12, 2004, Petitioner submitted a Request for Administrative Remedy with the Warden regarding his legal mail. This was rejected on October 13, 2004 because Petitioner failed to first pursue an informal remedy to his grievance. Id. Petitioner was notified he could resubmit his appeal in proper form within five days of the date of the rejection notice. Id.

Petitioner resubmitted his Request for Administrative Remedy with the Warden on or about November 24, 2004 alleging prison staff mishandled his legal mail. Zgrodnik Decl. ¶ 7; Doc. N. The Warden denied Petitioner's request on December 9, 2004. Id. The Warden's response explained that the letter in question did not comply with the criteria of special mail as set forth in Program Statement 5265.11, Correspondence, and Petitioner was told by the Assistant Inmate Systems Manager that one of his letters had the notation on it because it was opened in error. Id. Petitioner was also told that the investigation showed no evidence that the staff deliberately tampered with or opened his letter. Id. Finally, Petitioner was told if he was not satisfied with the Warden's response, he could appeal to the Northeast Regional Director within 20 days of the date of the response. Id. Records indicate Petitioner has not appealed Warden's decision to the Northeast Regional Director. Therefore, he has not exhausted all available administrative remedies. Zgrodnik Decl. ¶ 7; Doc. I.

### 4. *Petitioner has not exhausted his administrative remedies as to his staff retaliation claim.*

Prison records indicate that Petitioner has not filed any administrative remedy concerning his allegation of staff retaliation. Zgrodnik Decl. ¶ 7; Doc. I. Because Petitioner has not made a single attempt at an administrative remedy regarding any possible staff retaliation against him, he clearly has not exhausted all administrative remedies available to him.

Therefore, because Petitioner failed to exhaust his administrative remedies as to each issue prior to filing the Petition, his petition must be dismissed in its entirety for lack of subject matter jurisdiction.

**B.**     **Petitioner Does Not Allege Any Valid Constitutional Claims**

*1.     The Proper Procedures Were Followed In Petitioner's Hearing.*

Even if this Court were to reach the merits of this Petition, it must allow the Motion to

Dismiss because Petitioner has not been denied any rights protected under the Due Process

Clause.  The Supreme Court has established that the following three criteria that must be

afforded an inmate to protect his due process rights throughout a prison's internal disciplinary

process:  1) advanced written notice of any disciplinary charges; 2) the opportunity to call

witnesses and present documentary evidence on the inmate's behalf (when consistent with

institutional and correctional goals); 3) a written statement from the fact finder as to the evidence

relied on and the reasons for the disciplinary action taken.   Wolff v. McDonnell, 418 U.S. 539,

563-7 (1974). The BOP codified the Wolff guidelines through 28 C.F.R. § 541.10 *et seq* (2000).[5]

The applicable regulations require prison staff to prepare an incident report and refer it for

investigation whenever a prohibited act may have occurred.  28 C.F.R. § 541.14.  The results of

the subsequent investigation are given to the Unit Discipline Committee ("UDC") for an initial

hearing.  Id. at § 541.15.  The UDC can then determine if the act alleged in the incident report

occurred, or the case can be referred to a DHO for a subsequent hearing.  Id. at § 541.15(f).  The

DHO has the authority to dismiss the charge, determine if the alleged incident occurred, and to

impose any sanctions for the incident.  Id. at § 541.18.  Hearings conducted by the DHO also

satisfy the Supreme Court's criteria as set forth in Wolff.  Id. at § 541.17.  See  Frankenberry v.

Williams, 677 F. Supp. 793, 796-797 (M.D. Pa. 1988), aff'd, 860 F.2d 1074 (3d Cir. 1988).

_____

[5]  At least one court has suggested that the BOP regulations offer inmates more complete
due process protections than those established in Wolff.  See VonKahl v. Brennan, 855 F. Supp.
1413, 1418 (M.D. Pa. 1994).

Prison officials must comply with the following procedures designed to preserve inmates' due process rights when an internal disciplinary hearing is held. A DHO is required to give the inmate written notice of the charges at least 24 hours before the hearing. 28 C.F.R. § 541.17(a). The inmate must be provided the opportunity to have a full time staff member represent him/her at the hearing. Id. at § 541.17(b). During the course of the hearing, the inmate is allowed to make a statement, provide documentary evidence and call witnesses who have information relevant to the charges and are reasonably available. Id. at § 541.17(c). When deciding the outcome of the hearing, the DHO must consider all evidence presented, and the decision must be based on at least some fact. If conflicting evidence is presented, the DHO's decision is to be based on the greater weight of the evidence. Id. at § 541.17(f). Finally, the DHO must prepare a record of the hearing documenting: the advisement of the inmate's rights; the DHO's findings, decision, and specific evidence relied on for the decision; and, if needed, a statement of the reasons for and sanctions imposed. A copy of the record must be delivered to the inmate (usually within 10 days of the hearing).[6] Id. at § 541.17(g).

The Petition should be dismissed because Petitioner failed to specify which of the previously described procedures FMC Devens' staff denied him. While the government recognizes a delay in issuing the Petitioner a copy of the DHO's report, he ultimately received his copy which he acknowledged on October 5, 2004, when he signed an Advisement of Incident Report Delay. Doc. L. Prison records indicate that the Petitioner was afforded the opportunity to utilize all procedural safeguards the BOP implemented through 28 C.F.R. § 541.10 *et seq.*

---

[6] The BOP acknowledges that due to an administrative error, Petitioner did not receive a copy of his incident report, dated July 8, 2004, until October 4, 2004. The reason given for the dely was an earlier FBI investigation into the fight. See Docs. D, E.

Petitioner received written notice of the charges at least 24 hours before the hearing. Docs. D, F, H. He was present during the DHO hearing. Doc. H. Petitioner did not request representation of a staff member at his hearing. Docs. F, H § II(A). Petitioner made a statement to the DHO during the hearing, and did not raise any procedural errors at that time. Doc. H § III(B). Petitioner also provided the DHO with a three-page written statement at the hearing. Id. Petitioner's request to have one witness testify at the hearing was granted. Docs. F, H § III(c). Finally, Petitioner was given a copy of the DHO's report on November 4, 2004. Doc. H § IX. There was no procedural error or omission that denied him due process, nor did Petitioner raise any procedural error that would deny him due process in his either his initial Petition or his Amended Petition. Because the DHO conducted the hearing in accordance with 28 C.F.R. § 541.10 et seq. and the parameters established by the Supreme Court in Wolff, the Petitioner's claim that he was denied due process is without merit and should be denied.

In addition to his following proper procedure, the DHO's decision is supported by some evidence. Superintendent v. Hill, 472 U.S. 445, 454-455 (1985); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 954-955 (2d Cir. 1986). In order to protect an inmate's due process rights regarding a prison's internal disciplinary actions, the decision must be based on some evidence that has indicia of factual reliability rather than scientific exactitude. Pella v. Adams, 702 F.Supp. 244, 247 (D. Nev. 1988). Therefore, once a court determines that some evidence exists to support the DHO's decision, the Petitioner's evidentiary challenges must be disregarded, and the DHO's decision upheld. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d at 501-502; Freeman, 808 F.2d at 954-955.

11

## 2.     *Petitioner Has Had Access to His Legal Mail.*

Petitioner has failed both to state a valid claim that he was denied access to the courts and to show how any prison staff member limited his access to his legal mail in any way.  In order to claim that he was denied access to the courts, an inmate must show that the prison staff's actions caused some actionable harm such as the dismissal of a case the inmate filed or that prison conditions "hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S. 343, 351-52 (1996) (actual injury requirement is constitutional prerequisite to such a claim).  The Petition here fails to identify any actual injury or staff action or inadequacy at FMC Devens that limited his access to the courts.

Moreover, it has been held that an inmate's right to access the courts is limited.  See Wolff, 418 U.S. at 576.  It only protects his ability to directly appeal, to prepare initial pleadings in civil rights actions regarding current confinement, and to petition for a writ of *habeas corpus*. Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999).  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis, 518 U.S. at 355 (emphasis in original).

Here, Petitioner asserts that he was denied access to the courts by alleging "his legal correspondence had been violated." Amended Petition at 8.  Because Petitioner has failed to demonstrate any actual injury, he has failed to state a cognizable claim of denial of access to the courts.  Lewis, 518 U.S. at 351.  Therefore, Petitioner's claim that FMC Devens' staff interfered with his legal mail should be dismissed.

### 3.      Prison Staff Have Not Retaliated Against Petitioner.

Petitioner alleges the he was retaliated against for filing the Petition.  This claim must fail because Petitioner fails to establish any discriminatory motives.  It is well established that prison officials may not retaliate against an inmate for exercising his constitutionally protected rights.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-225 (3d Cir. 2000).  As a threshold matter, however, a prisoner asserting a retaliation claim against prison officials must prove that the conduct leading to the alleged retaliation is constitutionally protected.  Rauser, 241 F.3d at 333.  Although an inmate has a constitutional right to access the courts on his own behalf, he does not have a right to commit violations.  See Shaw v. Murphy, 532 U.S. 223, 231-232 (2001); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998).

An inmate must then show he suffered an "adverse action" at the hands of a prison official.[7]  Allah, 229 F.3d at 225.  Once the prisoner establishes this second prong, he must then show a causal link between the exercise of his constitutional rights and the adverse action.  Rauser, 241 F.3d at 333.

The Third Circuit has adopted the test for the third prong from the Supreme Court's decision in Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274 (1977).  The Supreme Court held that the plaintiff bore the initial burden of proving that his constitutionally protected conduct was a "substantial or motivating factor" in the decision to discipline him.  Id. at 285.  The burden then shifted to the defendant to prove by a preponderance of the evidence that it would have taken the same disciplinary action in the absence of the protected activity.

---

[7] The Allah court described an adverse action as one "sufficient 'to deter a person of ordinary firmness' from exercising his [constitutional] rights."  229 F.3d at 225 (internal quotations omitted).

Applied to the prison context, courts must recognize the difficulty of prison administration, and afford deference to prison officials' decisions because of their expertise. Rauser, 241 F.3d at 334.  The Supreme Court held that prison regulation can impinge on the constitutional rights of an inmate if it is "reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987).  Thus, when evaluating a prison retaliation claim, the Third Circuit incorporates the Turner balancing test into the Mount Healthy burden-shifting framework.  Rauser, 241 F.3d at 334.  Thus, once an inmate demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, prison officials may still prevail by showing that the same decision would have been made absent the inmate's protected conduct because that decision was reasonably related to a legitimate penological interest.

Here, the evidence indicated that the DHO's disciplinary action was appropriate and within the legitimate penological interests of FMC Devens.  The record indicated that Petitioner was afforded due process, the DHO's decision was based on the greater weight of the evidence, and a Code 299 is a punishment consistent with BOP policy.  See Doc. H.  The DHO's imposition of a Code 299 supports the legitimate and paramount penological interests of preventing inmate fights, maintaining a safe environment for all inmates and staff, and enforcing prison rules.

14

C.    **The Request for Transfer Is Not Proper And Must Be Dismissed**

Petitioner's request for transfer to another BOP facility is not a proper subject for a writ of *habeas corpus*.  A writ of *habeas corpus* may be granted if an inmate is, *inter alia*, "in custody in violation of the Constitution or laws or treaties of the United States"  28 U.S.C. § 2241(c)(3) (1966).  Petitioner does not allege that he is unlawfully in custody, but rather seeks a transfer.

Both statutory and case law clearly establish that the BOP determines the location of an inmate.  18 U.S.C. § 3621(b) (1994); U.S. v. Serafini, 233 F.3d 758, 778 n.23 (3d Cir. 2000) ("a district court has *no* power to *dictate* or *impose* any place of confinement . . .")(emphasis in original); U.S. v. Williams, 65 F.3d 301, 307 (2d Cir. 1995);  cf. McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of the prison administrators' expertise.").  Further, the Supreme Court noted in Moody v. Daggett:

> We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. . . . Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process.

429 U.S. 78, 88 n.9 (1976).  Because it is well settled that inmates do not have a right to request the location where they are to serve their sentences,  Petitioner's request for transfer does not entitle him to collateral relief through a writ of *habeas corpus*, and this Petition should be denied.

## III.    CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court dismiss this action with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully Submitted,

UNITED STATES OF AMERICA
By its attorney,

MICHAEL J. SULLIVAN
United States Attorney

By:      /s/ Eugenia M. Carris
         Eugenia M. Carris
         Assistant U.S. Attorney
         1 Courthouse Way
         Suite 9200
         Boston, MA  02210
         (617) 748-3100

Dated: December 30, 2004

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day caused a copy of the Memorandum in Support of Respondent's Motion to Dismiss Pursuant To Rules 12(b)(1) and 12(b)(6)  to be served on the *pro se* plaintiff, Olakunle Johnson Eddo #50350-053 at FCI Edgefield, 501 Gary Hill Road, Post Office Box 723, Edgefield, South Carolina 29824, by first-class mail.

                     /s/ Eugenia M. Carris
                     Eugenia M. Carris
Dated: December 30, 2004          Assistant U.S. Attorney

16